## GARMAN v. METROPOLITAN LIFE INS. CO.

### No. 9837.

United States Court of Appeals
Third Circuit.

Argued April 7, 1949.
Decided May 18, 1949.

MARIS, Circuit Judge.

The plaintiff, Anne Garman, who is the widow of J. Harry Garman and a resident of New Jersey, brought an action at law in the Supreme Court of New Jersey to recover the amount alleged to be due her as beneficiary on a life insurance policy issued to her husband by the defendant, Metropolitan Life Insurance Company, a corporation of New York. The defendant removed the action to the United States District Court for the District of New Jersey and filed an answer and counterclaim in that court. The defense set up by the answer was that the policy had been procured by fraud and was, therefore, void. In the counterclaim the defendant sought rescission of the policy upon the ground of fraud in that the answers by the insured to certain questions in the application for insurance were false in fact, were material to the risk and were relied upon by the defendant in issuing the policy. The fraud alleged in the answer was of the type described in New Jersey as "legal" fraud while that set up in the counterclaim was what is known in that state as "equitable" fraud, i. e., fraud formerly cognizable only in the Court of Chancery.[1]

The plaintiff filed a demand for jury trial pursuant to Civil Procedure Rule 38(b), 28 U.S.C.A., whereupon the defendant moved to strike the demand and asked that the court sit without a jury to determine in limine the issues raised by the counterclaim. The district court denied the motion, correctly holding, upon the authority of our decision in Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 1943, 137 F.2d 62, certiorari denied 320 U.S. 777, 64 S.Ct. 92, 88 L.Ed. 467,[2] to which we adhere, that the counterclaim should be treated as a supplemental answer rather than as a pleading seeking affirmative relief, and that the issues of fraud which it raised should be submitted to the jury at the trial of the case rather than be decided by the court without a jury prior to trial, D.C., 7 F.R.D.

Nicholas Conover English, Newark, N. J. (McCarter, English & Studer, Newark, N. J., on the brief), for appellant.

Ernest Fasano, Red Bank, N. J. (Quinn, Doremus, McCue & Russell, Red Bank, N. J., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

[1] Equitable relief is now granted in an action at law in New Jersey. See Article VI, Section III, Paragraph 4, of the Constitution of 1947, N.J.S.A., and Rule 3:12-2 of the Rules Governing Civil Practice in the New Jersey Superior Court.

[2] See also our second decision in Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 1947, 164 F.2d 660, at page 663.

473. The case thereafter came on for trial on the issues raised by the complaint, answer and counterclaim. At the trial the uncontradicted evidence disclosed the following facts:

The insured made application for the policy in suit on February 21, 1944. In the preceding autumn he had accompanied his wife when she had visited Dr. Maurice Mintz, a gynecologist, in New York City. In the course of conversation at that time the insured complained to Dr. Mintz about an itch from which he was suffering and Dr. Mintz suggested that he go to the consultation service at the Mt. Sinai Hospital in New York City for a checkup. The insured took Dr. Mintz's advice and went to the Mt. Sinai Hospital on October 8, 1943 upon which occasion he was examined by Dr. H. Evans Leiter, an urologist, as well as by seven other physicians connected with the hospital's consultation service. At Dr. Leiter's suggestion the insured came back to the Mt. Sinai Hospital on the morning of November 12, 1943 for a cystoscopy and bilateral retrograde pyelography which were completed during the day and he left the hospital in the late afternoon. These examinations disclosed an abnormal condition of both kidneys which Dr. Leiter reported by letter to Dr. Mintz on November 24, 1943. In addition to reporting to Dr. Mintz, Dr. Leiter talked to the insured, telling him that he should have kidney blood tests taken every three months and that he should not eat much protein but should drink plenty of water. Subsequent to his making application for the insurance policy in suit the insured again saw Dr. Leiter on March 15, 1944, March 30, 1944, February 21, 1945 and March 16, 1945. He died on November 21, 1945 at St. Luke's Hospital, New York City. The principal cause of death appearing upon the records of the hospital was chronic glomerulonephritis, a disease of the kidneys.

In his application for the policy of insurance in suit the insured had answered "none" to question 23 which inquired: "What clinics, hospitals, physicians, healers or other practitioners, if any, have you consulted or been treated by, within the past five years? If none, so state." At the close of the testimony the defendant moved for the direction of a verdict in its favor upon the ground that the undisputed evidence showed that the policy in suit was obtained by the fraud of the insured. The trial judge overruled the motion and submitted the case to the jury which rendered a verdict in favor of the plaintiff for the full amount of the policy, upon which verdict judgment was entered. Without making a motion for judgment in its favor in accordance with its motion for a directed verdict, as permitted by Civil Procedure Rule 50(b), the defendant took the appeal now before us.

Upon this appeal the defendant contends, inter alia, that the uncontradicted evidence established that the insured was guilty of "equitable" fraud in his answer to question 23 and that this made it the duty of the court to hold the policy to be invalid and unenforceable and upon that ground to direct a verdict in the defendant's favor. As we pointed out in Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 1947, 164 F.2d 660, 664, 665: " * * * the New Jersey courts have held that a life insurance policy will be declared invalid upon the ground of fraud and ordered to be cancelled if it is shown that it has been issued by the insurance company in reliance upon misrepresentations of material facts even though innocently made. This is what following the New Jersey practice, we have called 'equitable fraud.' The rule, however, is not quite so sweeping as it has just been stated. While it applies in full force to objective questions in an application for insurance the answers to which must be within the applicant's knowledge, such, for example, as whether he has consulted a physician or has been treated at a hospital, it does not apply to the same extent in the case of subjective questions, such, for example, as whether the applicant has had a given disease or ailment. In the case of a question of this sort the New Jersey courts have held that the question is directed toward probing the knowledge of the applicant and determining the state of his mind and if the answer is a correct statement of the applicant's knowledge and belief it is not to be regarded as a misrepresentation."

Question 23, with which we are here concerned, is clearly a question of the objective type, however. It seeks to elicit merely a statement of past perceptible occurrences, namely, what hospitals or physicians, if any, the insured had consulted or been treated by within five years. The trial judge properly instructed the jury that the answer to this question was material to the risk. It is equally clear from the uncontradicted evidence that it was relied on by the defendant in issuing the policy. If in fact it was not true the policy issued in reliance upon it was void under the New Jersey doctrine of "equitable" fraud even though the misstatement was wholly innocent and made without fraudulent intent. Accordingly if the uncontradicted evidence established that the answer was not true it was the duty of the trial judge so to declare and thereupon to direct a verdict for the defendant. We are satisfied that the uncontradicted evidence in this case did establish the untruth of the insured's answer to question 23 and that the trial judge erred in refusing to direct a verdict for the defendant.

The plaintiff contends that it was proper to submit the case to the jury because the use of the word "consulted" in question 23 rendered that question so ambiguous that an issue of fact was raised as to whether what the insured did amounted to a consultation of a hospital or a physician within the meaning of the question. We agree with the New Jersey courts that the use of the word "consulted" in such a question as this is not ambiguous, however.[3] To "consult" is, as Webster states,[4] "To seek the opinion or advice of another; to take counsel; to deliberate together; to confer." Under the undisputed testimony it is clear that the insured did just that with Dr. Mintz and with the consultation service of the Mt. Sinai Hospital and Dr. Leiter.

The plaintiff urges that the insured's visits to the Mt. Sinai Hospital and Dr. Leiter did not constitute a consultation because he was referred to the hospital by Dr. Mintz and Dr. Leiter's report was made to Dr. Mintz and not to the insured. Therefore, says the plaintiff, it was in reality Dr. Mintz who consulted the hospital and Dr. Leiter and not the insured who did so. In support of this contention plaintiff relies upon our decision in Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 1947, 164 F.2d 660, 666. That case is clearly distinguishable, however. There Dr. Levy, whom the insured in his application for insurance disclosed he had consulted, sent the insured to two other physicians for X-ray studies and a blood count. There was evidence that this was done by Dr. Levy for his own assistance in diagnosis and treatment of the insured and it appeared that the two physicians in question reported directly to Dr. Levy and not to the insured. We held that it was for the jury in that case to say whether they had been consulted by the insured or only by Dr Levy. In the case now before us, however, Dr. Leiter did actually counsel with the insured, advising him to return for periodic examinations and to follow certain rules of diet.

Moreover, here, unlike the Ettelson case, the insured did not disclose that he had consulted Dr. Mintz, the physician who suggested that he go to the Mt. Sianai Hospital. Certainly on the plaintiff's theory that it was Dr. Mintz and not the plaintiff who consulted the hospital it could hardly be contended that Dr. Mintz himself was not consulted by the insured but somehow initiated the series of transactions between the insured, the hospital and Dr. Leiter spontaneously and without conference with the insured. Indeed the plaintiff herself excluded any such possibility when she testified that the insured when he accompanied her upon the visit to Dr. Mintz himself complained to that physician about the itch from which he was suffering and that Dr. Mintz thereupon suggested to him that he visit the consultation service of the Mt. Sinai Hospital for a check up, which advice he promptly acted upon. The plaintiff's own testimony thus disclosed a complaint

[3] Kerpchak v. John Hancock Mut. Life Ins. Co., 1922, 97 N.J.L. 196, 199, 117 A. 836, 837; Pacific Mutual Life Ins. Co. v. Rosenthal, 1937, 122 N.J.Eq. 155, 158, 192 A. 742, 744.

[4] Webster's New International Dictionary, 2nd Ed., p. 573.

by the insured to a physician about an existing ailment, a suggestion by the physician of the appropriate step to take, namely, a physical check up by a group of specialists operating as a consultation service in a hospital and action by the insured upon that suggestion, resulting in an examination which disclosed a kidney condition and brought to the insured the advice to take further tests and to follow a special diet to meet the condition disclosed. We have no doubt that this series of events involved consultation with a physician as that term is understood in ordinary speech.

We conclude that the trial judge should have directed a verdict for the defendant. This conclusion makes it unnecessary for us to consider the defendant's other contentions. If the defendant after judgment had moved for judgment in its favor in accordance with its motion for a directed verdict we could remand the case with directions to enter judgment for the defendant. Such a motion not having been made, however, the case must be remanded for what under the circumstances would appear to be the useless formality of another trial.[5]

The judgment of the district court will be reversed and the cause will be remanded for a new trial.

---

[5] Cone v. West Virginia Pulp & Paper Co., 1947, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849.