**Louis BRAUD and Mrs. Anna S. Braud, Appellants,**

v.

**Floyd BAKER and Luke Kiethley, Appellees.**

No. 20213.

United States Court of Appeals Fifth Circuit.

Nov. 6, 1963.

Rehearing Denied Jan. 27, 1964.

214

J. D. DeBlieux, Baton Rouge, La., R. L. Netterville, Natchez, Miss., for appellants.

K. Hayes Callicutt, Jackson, Miss., for appellees.

Before CAMERON and BROWN, Circuit Judges, and WHITEHURST, District Judge.

CAMERON, Circuit Judge.

This appeal is from a jury verdict in favor of defendants-appellees Baker and Kiethley in two tort actions begun by plaintiffs-appellants Louis and Anna Braud, consolidated in the court below for trial. The plaintiffs received personal injuries and property damage when their automobile, proceeding south along Highway 51 near the town of Bogue Chitto, Mississippi, was struck by some portion of a truck-trailer combination transporting about twenty-one thousand pounds of rough lumber northbound on the same highway. The accident happened when all of the lugs on the left rear dual wheel of the trailer "snapped off," causing the hub to fall to the paved highway.

The truck-trailer veered from its position in the right, or northbound, lane of the highway into the left, or southbound, lane, proceeding a distance of substantially two hundred thirty feet from the point where the wheels came off of the trailer, most of which distance was in the left lane. Either the truck, or the trailer, or the lumber which was thrown from them struck the Braud car, mashing in the entire left side of its body and forcing the Braud car off of the road and shoulder into a ravine, fifteen or more feet deep, alongside the road. The negligence charged in the complaints was that the truck and trailer were overloaded, that the defendant Baker operated it at an excessive rate of speed, and failed to use reasonable judgment and care in stopping the vehicle, in proceeding into the wrong lane and into the side of plaintiffs' vehicle, and in operating the combination without any brakes on the trailer portion.

■ The only alleged error argued before us was the failure of the trial court to grant appellants' motions for a new trial. We reverse and remand, holding that the absence of brakes on the trailer constituted a negligent violation of Mississippi's law and that there is a total absence of probative evidence from which the jury could have found that such negligence was not a contributing cause of the injuries sustained by appellants. Appellees define in their brief the issue presented to us, in these words:

"Is the jury verdict contrary to the overwhelming weight of the evidence? We respectfully submit that not only is the verdict not contrary to the overwhelming weight of the evidence, but that the verdict of

the jury is supported by a preponderance of the evidence."

Our holding is against the appellees' contention insofar as it relates to the operation of the trailer without brakes.

Appellees were operating this motor vehicle, transporting more than ten tons of rough lumber in conscious and deliberate violation of Mississippi's laws. In 6 Recompiled Annotated Mississippi Code of 1942, § 8249(a) (3), covering "Brake equipment required," it is provided:

"Every trailer carrying over one ton, when operated upon a highway, shall be equipped with brakes, adequate, to control the movement thereof and to stop and to hold such vehicle, and so designed to be applied by the driver of the towing motor vehicle from its cab; said brakes shall be so designed and connected that in case of an accidental breakaway of the towed vehicle, the brakes shall be automatically applied."

The trial court gave full, explicit and articulate instructions covering this important phase of appellees' operations [1] and the jury simply ignored the court's instructions.

The testimony of what happened, stated most favorably to appellees, showed that, when the wheels flew off of the left side of the trailer and the weight of the trailer and the heavy load shifted towards the hub which was holding up that side, the truck and the trailer veered to the left and into the lane provided for traffic moving in the opposite direction, in front of plaintiffs who were moving in the southbound lane. The truck-trailer continued on that course for about two hundred feet during which time both members turned over, dumping the twenty-one thousand pounds of lumber with great force into the southbound lane. The Negro driver of the truck testified that it was the lumber which struck the side of the Braud car and knocked it across the wide shoulder and down the embankment.

The truck-trailer, which had righted itself after the lumber was discharged, ran about thirty feet before coming to a stop. The driver testified that he could not use his truck brake at all, that he touched the brake pedal one time and saw that it was going to cause the trailed to jackknife and he took his foot off and did not try the brake any more. The situation was, therefore, that this ten-ton load was catapulting down the road at a speed which the driver estimated at thirty-five to forty miles an hour, with no means of stopping in less than two hundred feet. Appellees claim that the loss of the trailer wheel assisted, rather than impeded, the stopping of the tandem-vehicle.

The only argument we find in appellees' brief attempting to justify the manifest finding of the jury that the absence of brakes was not a proximate or contributing cause of plaintiffs' injuries is their statement, "it would not make any difference whether or not the truck had brakes if the wheel flew off." To support

1. "The Court instructs the jury that at the time and place where the accident happened herein it was the *absolute duty of the defendants to have the tractor-truck equipped with brakes to control the movements of, to stop and hold the trucks*, including two separate means of applying brakes, each of which means shall be effective to apply the brakes to at least two wheels . . . In that this tractor-truck was carrying a trailer loaded in excess of over one ton at the time of the accident, *it was the duty of the defendants in operating same upon the highway to have the trailer equipped with brakes adequate to control the movement thereof, and to stop and to hold such vehicle, and so designed to be applied by the driver of the towing motor vehicle from its cab. * * * *

"The Court instructs you that the defendants have admitted that the trailer was not so equipped, and if you believe from a preponderance of the evidence herein the fact that the trailer was not equipped as required by law, and that this was the proximate cause, or the proximate contributing cause of the accident herein, then, in that event, it is your sworn duty to find for the plaintiffs against the defendants." [Emphasis supplied.]

that contention, appellees refer to the testimony of Highway Patrolman Griffin, which is reproduced in the margin.[2]

This testimony is far too uncertain and unconvincing to sustain a finding that the absence of brakes on this trailer did not contribute to the injuries sustained by plaintiffs. Aside from the fact that the patrolman refused to give any categorical answer to the question counsel was propounding to him, indicating clearly that he was not qualified to give expert testimony on the subject, it is clear that, if he had answered that the absence of brakes did not contribute to the accident, his answer would have been lacking in probative character. Cf. Geigy Chemical Corp. v. Allen, 5 Cir., 1955, 224 F.2d 110. Without dispute the right wheels of the trailer and the rotating hub on the left were in contact with the road, and both would have been held under control if the truck had been equipped with brakes. Common sense dictates the finding that, if the brakes had been locked on the hub and on the right rear wheels, the stop would have been made in a fraction of the distance the heavily loaded vehicle actually moved.

It is plain, moreover, that the drift would not have been nearly as far to the left if the two tires on the right tandem wheel of the trailer had been dragging on the pavement. The mere presence of the brakes would have lent stability to the trailer, and, if applied, it is likely that the trailer would never have turned over and spilled its heavy cargo onto the plaintiffs. There was, therefore, a complete absence of evidence from which the jury could have concluded that the failure to equip the trailer with brakes did not contribute to the collision. This being so, the motion for new trial should have been granted even though no motion for a directed verdict had been made by the plaintiffs. This follows from the long line of decisions of this Court of which these are examples: Marsh v. Illinois Central R. Co., and Reverse Title, 1949, 5 Cir., 175 F.2d 498; Kirby Lumber Corp. v. Laird, 1956, 5 Cir., 231 F.2d 812, 816; Complete Auto Transit, Inc. v. Floyd, 1957, 5 Cir., 249 F.2d 396, 399; Yorkshire Indemnity Co. of New York v. Roosth and Genecov Production Co., 1958, 5 Cir., 252 F.2d 650; Theriot v. Mercer, 1959, 5 Cir., 262 F.2d 754; Georgia Pacific Corporation v. United States, 1959, 5 Cir., 264 F.2d 161, 165–166.

■ A number of state court cases have been cited by the litigants touching this subject, but it is settled in this Circuit that the quality and quantity of proof necessary to make out a case for submission to a jury is a federal question. Revlon, Inc. v. Buchanan, 5 Cir., 1959, 271 F.2d 795, 800.

■ Appellees mention, but do not argue to any extent, the contention that Mrs. Braud, who was driving the car, had the last clear chance to avoid collision with the truck-trailer and its load and thus rescue herself and her husband from the negligence of the defendants. We do not think there was any dependable evidence from which this conclusion can be reached. The driver testified that he saw the Braud car when he was about a thousand feet from it, but Mrs. Braud stated that she did not observe the truck until she was two hundred fifty to three hundred feet from it. Her testimony was not disputed, and it does not indicate any negligence on her part. A motorist must keep a diligent lookout ahead of him, but this includes observing the road itself and also the sides of the road

2. "Q. In other words, the fact that you had or did not have brakes on the trailer wouldn't have helped. In other words, there wasn't anything to put traction on that side, was it?
"A. Well, you are getting into something there that I don't know anything about, the mechanical parts there, whether or not those brakes would work.

"Q. I am talking about if the wheel flies off there is nothing for the brakes to work on, is it?
"A. No, I wouldn't think so.
"Q. So it wouldn't make any difference whether you had brakes or not, would it?
"A. I don't guess it would. I don't know. * * * *"

to ascertain if any intersections are present or if a person or animal is along the side of the road. It involves also looking into the rear view mirror at frequent intervals. (The evidence showed that the Braud car was being followed at a fairly short distance by another car.)

On the basis of the minimum speed each driver was making, thirty-five miles per hour, the combined speed would amount to seventy miles per hour, which meant that the gap between them was being closed at the rate of one hundred three feet per second. About three seconds elapsed, therefore, between the time she first became aware of the presence of the oncoming truck-trailer—which apparently was about the time the wheel flew off of the trailer—and the time the ten ton load of lumber was being dumped onto her car. She testified that she had come to a stop, but the driver testified that her car was still moving. At all events, it is undisputed that she was trying to stop, and that her car was still in the right lane of the road where it had a right to be. The elapsed time would hardly be more than the distance published in the various available charts for driver reaction. If it should be thought that, in the emergency precipitated entirely by the negligence of appellees, she ought to have stopped sooner, her failure so to do could, at most, be construed as nothing more than contributory negligence. Under Mississippi law this could serve only to diminsh her recovery.

The proof in this case falls far short of establishing the defense of last clear chance, which this Court discussed fully in a recent case involving Mississippi law, Illinois Central R. Co. v. Underwood, 1956, 5 Cir., 235 F.2d 868, 877–878.

Motorists who are called upon to travel on the roads of south Mississippi and to meet or pass the large number of makeshift vehicles transporting lumber, pulpwood, logs, or pine knots should have the full protection of the laws of the state. The defendants, operating a vehicle in deliberate violation of the law, should feel themselves quite lucky that no fatal injuries ensued in this case, which presents such a clear picture of negligence proximately causing damage to persons exercising reasonable care in the use of the open roadways.

The judgment is reversed and the case remanded for a new trial consistent with this decision.

Reversed and remanded.