## Phillips's Estate.

350

Argued December 5, 1928.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

*A. A. Vosburg,* with him *John J. Owens, T. A. Dona-hoe* and *L. E. Renard,* for appellants.—Words in a statute are to be considered in their usual and proper sense: Com. v. Giltinan, 64 Pa. 100; Fidelity, etc., Co. v. Scranton, 102 Pa. 387; Com. v. Robb, 14 Pa. Superior Ct. 597.

A proceeding to probate a will is not a "civil proceeding" within the meaning of the statute prohibiting a physician from testifying in a civil action to a privileged communication.

It has been held that in matters involving the probate of a will, all contestants are claiming under the testator and stand in his place, and that therefore either party is competent to waive the statute and require the physician to testify.

A physician may be required to testify whether or not his patient had certain physical symptoms, even though they were symptoms of a disease, a disclosure of which would tend to blacken the patients' character: Skruch v. Ins. Co., 284 Pa. 299.

It seems plain, under all the evidence in the case, that an issue devisavit should have been awarded: Herster v. Herster, 116 Pa. 612; Miller's Est., 179 Pa. 645; Cozzrus's Will, 61 Pa. 196; Schwilke's App., 100 Pa. 628; Robinson v. Robinson, 203 Pa. 400; White's Est., 33 Pa. Superior Ct. 533; Knauss's App., 114 Pa. 10; De Haven's App., 75 Pa. 337; Wainwright's App., 89 Pa. 220; Harvey's Est., 181 Pa. 207.

*T. L. Hoban* and *Joseph O'Brien,* with them *C. P. O'Malley,* for appellees.—If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary: Com. v. Dickert, 195 Pa. 234; Allegheny County Home's Case, 77 Pa. 77.

The purpose of the statute is clear. It is evidently designed to protect the confidential relations between physicians and patients to the end that patients may freely give their confidence to physicians with no fear that they may be subjected to possible shame and humiliation through a violation of this confidence: Wells v. Ins. Co., 187 Pa. 166; Skruch v. Ins. Co., 284 Pa. 299.

Neither the physicians called by contestants nor any of their other witnesses were properly qualified before expressing their opinion as to the testamentary capacity of Mrs. Phillips.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1929:

On the hearing of a petition for an issue devisavit vel non, contestants produced three of decedent's attending physicians. They said she was suffering from paresis, and was not competent to make a will. On cross-examination they testified that, in their opinion, paresis can result only from syphilis; but did not say whether or not, in her case, it was inherited, or arose because of her personal actions, and if so, whether they were proper or improper. Assuming that the disclosure of the fact stated would tend to blacken her character, the trial judge ultimately excluded their testimony from consideration, his reason for so doing being the Act of June 7, 1907, P. L. 462. Logically, he also excluded the opinion evidence of other doctors, whose conclusions, in whole or in part, were based on that of the attending physicians. From his refusal of the issue prayed for, this appeal was taken. The exclusion of the evidence referred to was error.

The title and enacting section of the statute are: "An act to prevent physicians and surgeons from testifying, in civil cases, to communications made to them by their patients, except in civil cases brought by their patients for damages on account of personal injuries.

"Section 1. Be it enacted, etc., That no person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without the consent of said patient, except in civil cases, brought by such patient, for damages on account of personal injuries." A number of reasons were alleged why this act could not properly be applied in the present case, but we will refer to one of them only.

It will be noticed that the language in the body of the statute is broader than that used in the title. The act refers to "information which he [the physician] ac-

quired in attending the patient in a professional capacity"; this would include information obtained by examining the patient. Hence, in Reid v. Reid, 50 Pa. C. C. 601, 604, a court of common pleas decided that "information includes not only statements, but also knowledge arising from observation and examination of the patient," and held a doctor incompetent to testify as to such knowledge, because his evidence tended to blacken the character of his patient. The title of the act is limited, however, to "communications made to them [the physicians or surgeons] by their patients." That which results from an examination only cannot be communications made to the doctor by the patient.

In Strain v. Kern, 277 Pa. 209; Spangler's Est., 281 Pa. 118, and Spector v. Northwestern Fire & Marine Ins. Co., 285 Pa. 464, 470, we said that a statute is constitutional only to the extent that its purpose is *clearly* expressed in the title, everything beyond this being violative of article III, section 3, of the state Constitution. We have also steadily held to the requirement of a *clear* expression, in contradistinction to one which can only be reached by a process of reasoning: Provident Life & Trust Co. v. Hammond, 230 Pa. 407; Investor's Realty Co. v. Harrisburg, 281 Pa. 200; Guppy v. Moltrup, 281 Pa. 343. It follows that, however broad a construction would otherwise be given to the word "information" in the body of the act, its constitutional scope cannot be extended beyond "communications," and this limitation must be still further restricted by the words "made *to* them [the physicians and surgeons] *by* their patients." Those two prepositions wreck any possible argument which can be made to support the ruling below. Possibly without them, however, the same conclusion would be reached.

Black's Law Dictionary (2d ed.) defines a communication to be: "Information given; the sharing of knowledge by one with another; conference; consultation or bargaining preparatory to making a contract." The

Century Dictionary declares it to be the "Interchange of thoughts, opinions or information by speech or writing." Webster's New International Dictionary says it means: "Intercourse by words, letters or messages; interchange of thoughts or opinions, by conference or other means; converse; correspondence." And the new Oxford Dictionary says it is "The imparting, conveying or exchange of ideas, knowledge, information, etc., (whether by speech, writing or signs)." It will be noticed that all of these definitions exclude the idea that "communications" include the results of a physical examination by a doctor. Beyond them, therefore, there can be no *clear* expression of such a meaning.

An extended examination of the authorities, here and elsewhere, shows that, aside from Reid v. Reid, supra, all but three of them antagonize appellee's contention on this point, and those three are inapplicable to our Constitution and statute. In Com. v. Sapp, 90 Ky. 580, the act provided that "neither husband nor wife shall be competent......[to testify] concerning any communication made by one to the other during marriage." It was said: "the word 'communication,'......as used in our statute......should not be confined to a mere statement by the husband to the wife, or vice versa, but should be construed to embrace all knowledge upon the part of the one or the other obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known to the party." In Battis v. Chicago, Rock Island & Pacific Ry. Co., 124 Iowa 623, a statute providing that "No practicing......physician......who obtains such information by reason of his employment......shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice," was held "not to be restricted to the mere verbal statements made by the patient, but must be

construed to include all knowledge or information acquired by the physician through his own observation and examination." And in Haughton v. Ætna Life Ins. Co., 165 Ind. 32, where the statute prohibited physicians from testifying to "matters communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases," it is said "The statute only forbids the physician from making public, matter concerning his patient [which was] communicated to or learned by him, as such, through his professional relation." The "learned by him" is obiter dictum, no such question having arisen in the case. If we assume all these cases to have been properly decided, however, they are not even persuasive here, since in none of them was there the necessity of clear expression required by our Constitution, and only in the last did the fatal prepositions "to" and "by" appear, and there, neither in the obiter dictum, nor elsewhere, was their effect considered.

In Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299, which appears to be the only case in which we have construed the Act of 1907, the effect of the title was not referred to, but the opinion, so far as it is relevant, bears out the conclusion we now reach. There the deceased, in his application for insurance, had answered "No," to questions inquiring whether or not he had ever had convulsions or any other illness than as stated by him, epilepsy not being among them. When his attending physician was called as a witness, he was excused from answering whether or not decedent had had epilepsy or convulsions prior to the making of the application, because he had "indicated to the court [below] that the specific disease of which [insured] was suffering [was a loathsome one] of which epilepsy and convulsions were only symptoms." We reversed the ruling, and held that the Act of 1907 did not excuse the doctor from answering the question.

It is clear, therefore, that, in the present case, the court below erred in excluding from consideration the

356

testimony of the physicians referred to in the first paragraph of this opinion. In his argument at bar, appellees' counsel vigorously urged us not to reverse the order refusing the issue, though we reached this conclusion, but to review all the evidence, and if, upon consideration thereof, we should find, as he believed we would, that even with the testimony of the physicians included the issue could not properly have been awarded, to treat the error as harmless and affirm the order. In proper cases we take that course, but this is not one of them. We have here the testimony of 24 witnesses, covering 667 pages of the record. The trial judge saw all of these witnesses, and hence is far better able to determine what weight should be given to their testimony than we can possibly be: Mirkil v. Morgan, 134 Pa. 144, 155; Clarkson v. Crawford, 285 Pa. 299, 303. Under such circumstances, therefore, we "necessarily largely rely upon the judgment of the court below, which best knows what are the requirements of justice in such cases": Cleveland Worsted Mills Co. v. Myers-Jolesch Co., Inc., 266 Pa. 309, 311; Class & Nachod Brewing Co. v. Giacobello, 277 Pa. 530, 536. We are not willing to take the risk of doing an injustice here by refusing to follow that important rule.

It must not be supposed, because of our reversing the order of the court below, that we have reached a conclusion adverse to that expressed by the trial judge, after he had erroneously excluded the testimony of appellant's physicians. We have been careful to avoid having an opinion, or even a leaning, one way or the other, on that question, and have studiously limited our reading of the evidence and of the opinion below, to so much thereof as relates to such erroneous exclusion. Beyond this we are not willing to go until we have had the benefit of the judgment of the court below on the whole of the evidence.

The order of the court below is reversed and the record is remitted with a procedendo.

Mr. Justice FRAZER dissented.