Massich, Appellant, *v.* Keystone Coal and Coke Company.

Argued October 9, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Jas. L. Kennedy,* for appellant.

*A. N. Pershing, Jr.,* for appellee.

OPINION BY KELLER, P. J., December 13, 1939:

The appellant, the claimant in this workmen's compensation case, was accidentally injured on September 7, 1934, while in the course of his employment with the defendant. An open compensation agreement for total disability was entered into between the parties on September 19, 1934 which was approved by the board on September 26, 1934. In this agreement the accident and claimant's injuries were described as follows: "Piece of roof [of mine] fell from entry, lacerating head," but it later was discovered that he also had sustained a fracture of the fibula, the small bone in the right leg, just below the knee.

On January 9, 1935 the employer filed a petition to terminate the compensation agreement averring that the injuries received on September 7, 1934 had entirely healed and that claimant was able to resume work on January 7, 1935. An answer was filed by claimant denying that his injuries had healed and that he was able to resume work. He claimed that the injuries to his head and knee still disabled him from working.

It is not necessary to recite in detail the various references and hearings held pursuant to the above petition and answer. Four hearings were had before a referee and four hearings before the board, and every opportunity was given the claimant to support by medical testimony his contention that because of disability he was unable to return to work, and that the disability was the result of his injury of September 7, 1934. He refused to avail himself of the opportunity, asserting that it was unnecessary. He not only called no medical testimony to refute the medical witnesses called by defendant, but when the latter called Dr. C. A. Goble, who had attended claimant as his physician, his counsel objected to his testifying, as follows: "We will admit the doctor's qualifications as a physician and sur-

geon, but I object to the doctor giving any testimony with reference to what he discovered or learned in the treating of this patient; but that testimony is private and can not be disclosed, the courts would not allow it to be disclosed without consent of the patient. That is the proposition we are up against here. We don't propose to allow our doctor to turn state's evidence." In consequence of this objection, the witness was withdrawn.

The objection was without merit and should have been overruled. The Act of June 7, 1907, P. L. 462, only forbids a physician or surgeon from disclosing, without the consent of his patient, in any civil case (except for damages on account of personal injuries), any information which he acquired in attending the patient in a professional capacity, *which tended to blacken the character of the patient.* (Italics ours.) And because of the language of the title of the Act, the prohibition was limited by the Supreme Court in *Phillips' Est.,* 295 Pa. 349, 353, 145 A. 437, to information received by the doctor by way of *communications* made to him by the patient, and held not to apply to information which resulted from an examination of the patient by the doctor.

The claimant having refused to furnish medical testimony, the board, in order that no injustice might result to him from his refusal, directed the referee to employ an impartial medical witness to examine the claimant and report. The referee appointed Dr. Vaccaro, a general surgeon, who made two examinations of the claimant, the first for more than an hour, and the second for about half an hour. He took no X-ray pictures of claimant's head. He testified that the fracture of claimant's right fibula had entirely healed, without any shortening or deformity, which was in accord with all the other medical testimony. It was his opinion, however, based on his examination of claimant's head, and accepting as true claimant's statement that he had

been unconscious for three hours following the injury, that he had suffered a severe fracture to his skull which had injured his brain and caused the dizziness, headaches, insomnia, loss of appetite and weakness from which claimant asserted he was suffering and which, he said, disabled him from working. He admitted that claimant appeared to be a healthy man.

In rebuttal, defendant recalled Dr. Potts, who had attended claimant immediately after the accident and several lay witnesses who saw him shortly after the accident, who testified that claimant was unconscious for only five to ten minutes. Defendant also called Dr. Henninger, a specialist in mental and nervous diseases, who had claimant under examination at the St. Francis Hospital from February 7 to February 15, 1938, in the course of which X-ray pictures were taken of his head. His testimony was to the effect that while the outer plate of the skull may have been fractured, the inner plate was not, and that in consequence the brain had not been affected by the injury. His opinion had been based on the history given by claimant of a three-hour unconsciousness following the injury. If unconscious for only the short time testified to by defendant's witnesses, an injury to the brain was even less likely. He said that in his judgment there was no injury to claimant's leg or to his brain which prevented him from going to work.

The referee's final finding of fact was that claimant's disability, resulting from the injury of September 7, 1934, had ceased as of January 6, 1935, and he accordingly terminated the agreement.

On appeal by the claimant, the board affirmed the findings of fact, conclusions of law, and order of the referee, holding upon the question of fact: "We are well satisfied that the testimony of Doctor Henninger constitutes the weight of the evidence, because Doctor Vaccaro admitted that he based his finding on the history given him by the claimant wherein he (the claim-

ant) stated that he was unconscious for three hours when as a matter of fact the competent testimony of record discloses that he was unconscious but five minutes after the accident. Doctor Vaccaro likewise arrived at his conclusion on the subjective symptoms complained of by the claimant without the benefit of X-rays. Contrary to this Doctor Henninger had available X-ray studies of the claimant, complete clinical reports and had the opportunity of having the claimant under hospital observation for a period of approximately eight days. His definite testimony and the qualification of his testimony convinces us that the testimony given by him must be accepted by us as constituting the competent testimony of record. Any fair minded person reading through this record will see that the Board and the Referee exhausted their every effort to enable this claimant to disprove the evidence placed in the record by the defendant that he was able to resume work on January 6, 1935. We are of the further opinion that the defendant has met the burden of proof placed upon it and has proven that the claimant was able to resume work on January 6, 1935."

The board having resolved the governing question of fact in favor of the defendant on substantial competent evidence in the record, neither the court below nor this court has power or authority to disturb it. The court below properly so found and entered judgment for the defendant. We are likewise concluded by the finding.

The cases relied upon by the appellant are all distinguishable on the facts.

Judgment affirmed.