## Stark Dental Associates, P.C. v. Medical Service Association of Pennsylvania

*Robert B. Sommer*, for plaintiffs.
*Joseph Friedman*, for defendants.

FINKELHOR, J., November 21, 1978—The above-captioned matter comes before the court on plaintiffs' motions to amend the discovery order of June 27, 1978, and for sanctions for defendants' failure to comply with the order of June 27, 1978; and on defendants' renewed request for production of documents and a motion for sanctions against plaintiffs due to insufficient answers to interrogatories.

The initial controversy stems from plaintiffs' action in equity, alleging discriminatory treatment of plaintiffs who maintain and operate a dental practice and are cooperating dentists under the Blue Shield Dental Plan. Plaintiffs seek to discover from Blue Shield records alleged discrepancies between Blue Shield demands on plaintiffs and other dentists—particularly, requests for preauthorization of dental work and delayed approval of plans for dental treatment. It is plaintiffs' position that these practices have resulted in the loss of patients to other dental practitioners.

Specifically, in response to plaintiffs' interrogatory #1, relating to individual patients who subsequently had services performed by another dentist, defendants answered that 158 patients, once treated by plaintiffs, subsequently retained other practitioners. Plaintiffs now seek access to the claim forms submitted by these former patients to Blue Shield and request the name of the patient and the services rendered.

In support of their counterclaim for breach of contract (i.e., overcharge of Pennsylvania Blue Shield subscribers), defendants seek access to plaintiffs' patient records, including the records of non-Blue Shield subscribers from January 1974 to the present time to compare fees charged said patients with subscribing patients.

In effect, both plaintiffs and defendants are seeking the dental records of persons not parties to these proceedings and with no interest in this action.

In support of their discovery motions, both parties argue that dental charts, showing examination results only, are not privileged communications within the scope of the doctor/patient privilege: Act of June 7, 1907, 28 P.S. §328;[1] Woods v. National Life and Accident Ins. Co., 347 F. 2d 760 (3d Cir. 1965); Phillips's Estate, 295 Pa. 349, 145 Atl. 437 (1929); Rearick v. Griffith, 27 D. & C. 2d 451 (1962).

While there are no clear precedents in Pennsylvania law that the physician/patient privilege of the Act of 1907 extends to the dentist/patient relationship, 97 C.J.S. §294(c), 830, we are not concerned with the admissibility of the records sought, but rather with their availability for purposes of discovery.

Relevant, material and competent matters, not otherwise privileged, are discoverable by parties to a lawsuit. See T.C.R. Realty, Inc. v. Cox, 472 Pa. 331, 372 A. 2d 721 (1977). However, there is a constitutional limit on the scope of discovery into the medical and other records of non-litigants: Berman v. Duggan, 119 Pitts. L.J. 226 (1971).

In the very recent Pennsylvania Supreme Court case In re: "B", Appeal of Dr. Loren Roth, 482 Pa.

---

1. Act of June 7, 1907, P.L. 462, sec. 1, 28 P.S. §328: "Physicians and surgeons not to disclose information; exception—No person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil cases, brought by such patient, for damages on account of personal injuries."

471 (1978), the Pennsylvania Supreme Court considered the right of patient privacy under both the Federal and State Constitutions and stated:

". . . The general right of privacy, however, has been recognized by Pennsylvania courts as an independent and distinct legal concept in the field of tort law. See, Bennett v. Norban, 396 Pa. 94, 151 A. 2d 476 (1959); Mack Appeal, 386 Pa. 251, 126 A. 2d 679 (1956). . .
". . .
". . . in Pennsylvania, an individual's interest in preventing the disclosure of information revealed in the context of a psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is constitutionally based."

In the Appeal of Roth, the psychiatric records of the mother were sought by the Juvenile Court to determine an appropriate placement for a troubled juvenile and, upon refusal to produce the records, the psychiatrist was held in contempt of court. While public interest weighs heavily in terms of appropriate juvenile placement, the Supreme Court found that the prior psychiatric records of the mother were protected by her right of privacy.[2]

In State v. Curtis, 334 S.W. 2d 757 (Mo. App. 1960), the Springfield Court of Appeals noted the

---

2. The right of privacy to which we refer is that found in the "penumbras" of the Constitution rather than that covered by Restatement, 2d, Torts, §867. [Editor's note: See now, Restatement, 2d, Torts, §652 A et seq.]

distinction between the assertion of an evidentiary and a constitutional privilege as follows:

"We apprehend that, notwithstanding the fact that a document may not be strictly privileged, its production may sometimes constitute 'an unreasonable invasion of . . . right of privacy.' . . . 'Justice to all concerned' may be considered in passing on whether the document is of such evidentiary value as to demand its production. . . . And the court might in some instances be required to exercise discretion in determining whether a person not a party may be so unduly affected by the exposure of his or her private affairs as to overbalance the need for and value of the production of the document through the processes of discovery. Also we think the court might in its discretion hedge the examination of the document with such reasonable restrictions as are possible and practicable in order to protect the privacy in respect to matters not material to the case. . . ." 334 S.W. 2d at 763-764 (Citations omitted).

While the dental records sought to be discovered in the instant proceedings, presumably, do not contain matters which will tend to blacken the character of the dental patients, the contents of the dental records and claim forms do include personal information and medical and dental histories which the patient divulged to the dentist for the purposes of the dental consultation and care and certainly not for their use in subsequent litigation with a third party: Blue Cross of Northern Calif. v. Superior Court of Yolo County, 61 C.A. 3d 798, 132 Cal. Rptr. 635 (1976). We believe that the instant proceedings are simply a matter of degree from the holding in

Roth. While the disclosure of psychiatric records is a clear threat to the individual's right to privacy of medical records, we believe that this principle must also extend to all health procedures involving third persons who are neither known to the court nor concerned with the litigation and, in fact, may have no knowledge that their records are being examined or investigated. We do not think a rule of law can be fashioned to draw a line between appendectomies and hysterectomies or tonsilectomies and hemorrhoidectomies.

While dental patients who are also Pennsylvania Blue Shield subscribers, as incidental parties to the agreement between Pennsylvania Blue Shield and the participating dentist, may be considered to have waived their right to the privacy of their dental records for the purpose of verification of rates, the same may not be said of non-Pennsylvania Blue Shield subscribers or the patients of another dentist.

In these proceedings, neither plaintiffs nor defendants have made any attempts to secure the consent of the individual patients to whom the records belong.[3]

By previous order, we have already authorized discovery of Blue Shield records with the names of the patients deleted and have permitted production of patient charges made by plaintiff Stark without patient records. To further open individual records with the names included becomes a "fishing expedition" and invades the interest of persons not before the court.

An appropriate order is attached hereto.

---

3. From a practical standpoint, such consent could be routinely secured from the patient at the time of examination.

## ORDER

And now, November 21, 1978, upon plaintiffs' motion to amend the discovery order of June 27, 1978, and defendants' renewed requests for production of documents, it is hereby ordered, adjudged and decreed that said motions and sanctions are denied.