## In Re: Search of Offices of Action Mental Health, Inc.

*Mark J. Homyak,* for Action Mental Health, Inc.
*Michael Ahwesh and Dara DeCoursey,* for Commonwealth.

FINKELHOR, *J.,* August 3, 1983—This is an action in equity seeking to enjoin the examination by the district attorney of patient files seized under a valid search warrant from the offices of Action Mental Health, Inc. (Action) pursuant to a criminal investigation of alleged fraudulent billing practices. It is the position of petitioners that such records are statutorily and constitutionally protected and that the psychotherapist-patient privilege prohibits the district attorney from examining the documents seized in conjunction with its criminal investigation.

This court, by order dated June 10, 1983, ordered said records impounded until the issue of privilege could be resolved. Based upon the questions raised by counsel, the court must determine whether: (1) Action Mental Health has standing; (2) equity has jurisdiction; and (3) the constitutional right to privacy forbids the examination of the records of an individual receiving the services of a mental health counsel.

## FACTS

Pursuant to the hearing held in June 1983, the facts are briefly summarized. Action maintained offices at 8150 Perry Avenue, North Hills, Allegheny County, Pa., and provided outpatient mental health, marital, drug and alcohol counseling and related services. Petitioner also operated through Action Weight Loss Clinic, a program of structured weight

loss through the use of a certain brand of prepackaged food products which were also sold at the clinic. In the mental health division, petitioner employed two part-time psychiatrists and two part-time licensed psychologists, plus an array of other counselors and support personnel of widely varying educational backgrounds and qualifications. The mental health services were financed, in part, by third party payees, chiefly Blue Shield of Pennsylvania. Following a number of "tips" telephoned to the Blue Shield Anti-Fraud Hotline, the district attorney's office launched an investigation of the Action operation. As a result, a warrant was issued to authorize the seizure of the files of all patients in whose name Action had submitted claims to Blue Cross/Blue Shield.

At the hearing, a psychotherapist testified that some of the patients, whose records were seized, were under the care of a psychiatrist or psychologist or other persons with mental health training. The therapist performed individual and family counselling involving highly sensitive issues and included in the files were the notes of the treating therapist. The district attorney has not sought permission from any patient for the use of his or her records nor has any patient sought to intervene to prevent the disclosure of these records. However, witnesses testified to the effect that certain unnamed patients were concerned over the seizure.

## ACTION'S CLAIM OF THE PRIVILEGE

The general rule is that the claim of privilege belongs to the patient, not to the physician. Romanowicz v. Romanowicz, 213 Pa. Super. 382, 248 A.2d 238 (1968).

This question was raised in In Re: June 1979 Allegheny County Investigating Grand Jury, 490 Pa.

143, 415 A.2d 73 (1980). In this case, the grand jury subpoenaed tissue reports and other laboratory material as part of an investigation.

"Although the patient's medical records are the property of the hospital, the personal nature of the information they contain results in an obligation on the part of the hospital to maintain the confidentiality of the records. Unless otherwise provided by law, the hospital must limit access to the records to authorized personnel in the absence of consent by the patient." 415 A.2d at 76

As the purpose of the "physician-patient" privilege is to protect the privacy of the patient, the courts have accepted a claim of the privilege on the part of the institution holding the records. To hold otherwise would be to give the patient names to the court and the right of privacy would have been lost. Even though Action is a potential defendant in any further activity in this case, it may raise the privilege in order to protect the patient's privacy.

## EQUITY JURISDICTION

Traditionally, courts of equity have refused, except in rare instances, to enjoin criminal prosecutions. Cleary v. Bolger, 371 U.S. 392, 83 Supreme Ct. 385 (1963).

It is the Commonwealth's position that a full, complete and adequate statutory remedy at law is available under Pa.R.Crim.P. 324 and that, consequently, equity should not have taken jurisdiction over the instant matter. While Rule 324 permits a person aggrieved by a search and seizure to move for the return of the property on the ground that he is entitled to lawful possession thereof, this would not protect the rights of the patients who conceivably could be harmed by disclosure. In addition,

Rule 324 does not protect the privacy of the information but is limited to suppressing their use at time of trial. Even if the court directed that the records be suppressed and returned, it would not prevent law enforcement officials from examining the records and perhaps inadvertently disclosing information contained therein. Under the circumstances, the remedy afforded by the rule is not adequate, complete and effective to prevent the casual inspection of private records. Accordingly, absent an action in equity, the patients, involved, would lack a remedy to protect their right of privacy.

## STATUTORY PRIVILEGE

The next issue is whether there exists any statutory basis for the assertion of the privileged character of patient records. The physician-patient privilege, 42 Pa.C.S. §5929 (1982), is inapplicable to the facts presented here. First, the privilege applies only to civil matters. Com. v. Edwards, 318 Pa. 1, 178 Atl. 20 (1935). It does not extend to nurses or other support personnel except in the limited circumstances where, for example, a nurse overhears a communication between a patient and physician. In Re: ABC, Juvenile, 12 Adams L.J.; 51 D.&C.2d 424 (1971). Lastly, the privilege applies only to information which would tend to blacken the character of the patient. It does not render incompetent testimony regarding facts which the physician learned from examination or observation, nor is it a bar to testimony concerning communications between physician and patient where such communication does not tend to blacken the character of the patient. Com. ex rel. Platt v. Platt, 266 Pa.Super. 276, 404 A.2d 410 (1979).

Petitioners also cite the Mental Health Procedures Act, 50 P.S. §7111 (Supp. 1983), as mandating that the patient records be held in confidence. The scope of the Mental Health Procedures Act is limited to persons receiving involuntary treatment and to those receiving voluntary treatment on an inpatient basis. 50 P.S. §7103 (Supp. 1983). There is no evidence that persons, whose records were seized, were undergoing inpatient or involuntary outpatient treatment.

Equally inapplicable to most of the persons providing treatment at Action is the Act of July 9, 1976, P.L. 586, No. 142 §2, relating to the confidentiality of communications to licensed psychologists. As previously discussed, the evidence indicates that a majority of the counselors peforming services at Action were not licensed psychologists, and hence are afforded no protection by the psychologist's privilege. 42 Pa.C.S. §5944 (1982). Although similar privileges exist with respect to news reporters (§5942), clergymen (§5943), school personnel (§5945), and sexual assault counselors (§5945.1), the legislature has not chosen to extend this privilege to the patient of an unlicensed counselor, however well qualified, who receives outpatient counseling on a voluntary basis.

## CONSTITUTIONAL PRIVILEGE

No specific guarantee of privacy is contained in either the Constitution of the United States or in the Constitution of the Commonwealth. However, the Supreme Court has long concluded that the right of privacy may be found in the penumbra of various specific constitutional guarantees contained in the First, Third, Fourth, Fifth and Ninth amendments of the Constitution. See e.g., Roe v. Wade, 410 U.S.

113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1062, 16 L.Ed.2d 694 (1966); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

Justice Douglas found that the right of privacy "emanates from the totality of the constitutional scheme under which we live." Poe v. Ullman, 367 U.S. 497, 520, 81 S.Ct. 1752 (1961) (dissenting opinion) and is a concept deeply rooted in the common law.

As stated in an early commentary in the 1890 edition of the Harvard Law Review:

"The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments and emotions shall be communicated to others. Under our system of government, he can never be compelled to express them (except when upon the witness stand); and even if he has chosen to give them expression, he generally retains the power to fix the limits of the publicity which shall be given them." 4 Harv.L.Rev. at 198.

The Constitution of Pennsylvania, Art. I, Section 1, provides that:

"All men are born equally free and independent, and have certain indefensible rights, among which are those of enjoying life and liberty, of acquiring, possessing and *protecting property and reputation,* and of pursuing their own happiness." (Emphasis added.)

Whatever its origins, the right of privacy is a hallmark of a free soceity. "No system of justice in such a society can accept or tolerate unreasonable and unbounded intrusions, whether by government officials or by private individuals upon that basic and fundamental right." Com. v. Helms, 234 Pa.Super.

537, 343 A.2d 362, 367-68 (1975). The right of privacy, protected by these constitutional underpinnings, extends not only the right to be free from unreasonable searches, compulsory self-incrimination and unauthorized use of likeness, but also to the personal intimacies of the home, the family, marriage, motherhood, procreation and child rearing, Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), and to the prolongation of life itself. In Re: Yetter, 62 D.&C.2d 619, 24 Fiduc. 1 (1973).

"[T]he constitutionally protected privacy of family, marriage, motherhood, procreation and child rearing is not just concerned with a particular place, but with a protected intimate relationship. *Such protected privacy extends to the doctor's office, the hospital, the hotel room,* or as otherwise required to safeguard the right to intimacy involved." Paris Adult Theatre I, supra, 413 U.S. at 66, n. 13 (Emphasis added)

Pennsylvania has recognized that the individual's interest in preventing the disclosure of information revealed in the context of the psychotherapist-patient relationship invokes such constitutionally protected privacy interests.

In Re: B, Appeal of Roth, 482 Pa. 471, 394 A.2d 419 (1978) the court stated:

"The nature of the psychotherapeutic process is such that disclosure to the therapist of the patient's most intimate emotions, fears and fantasies is required. As pointed out in appellant's brief:

" 'People usually enter psychotherapy because they have deep-seated conflicts and impairment of functioning which limit their ability to work effectively and to enjoy fully satisfying relationships with other people. to alleviate these blocks and conflicts, the therapist asks the patient to abandon "rational

thought" and to express thoughts and fears that may never have been revealed to anyone else. Indeed, these innermost thoughts are often so painful, embarrassing or shameful that the patient may never before have allowed himself to acknowledge them.'

"The patient in psychotherapy knows that such revelations will be expected if the process is to be beneficial. In laying bare one's entire self, however, the patient rightfully expects that such revelations will remain a matter of confidentiality exclusively between patient and therapist . . ." 394 A.2d at 425

The element of confidentiality, therefore, is essential to the creation and maintenance of the therapist-patient relationship, a relationship which, given the complexity and stresses of modern-day living, advances a legitimate and important societal interest. The effectiveness of this relationship may be severely limited should it appear to individuals seeking therapy that matters revealed in confidence may later be disclosed. In addition to being frightened into nondisclosure during the course of the relationship, the individual may be deterred from entering into such a relationship at all by the fear that the private nature of such communications may not be maintained. See, In the Matter of Pittsburgh Action Against Rape, 494 Pa. 15, 428 A.2d 126, 135 (1981) (Larsen, J., dissenting); see also, Tarasoff v. Regents of University of California, 131 Cal.Rptr. 14, 39, 551 P.2d 334, 359 (1976) (Clark, J., dissenting).

Because the right to privacy in information revealed in the psychotherapist-patient relationship is constitutionally based, such right exists irrespective of whether or not the legislature has chosen to recognize it through statutory enactment. In Re: "B", supra. To the extent that persons are engaged in the

process of providing services in the nature of psychotherapy, information revealed in the context of this relationship must be held to be privileged regardless of whether or not the individual may also assert a statutory privilege based on the special qualifications of his or her therapist.

Furthermore, there would appear to be no compelling state interest which would require the disclosure of information contained in the records of those patients receiving psychotherapy. Where a burden is imposed on the exercise of a fundamental right, such as the right of privacy, the state is justified only by compelling state interest, and the burden imposed must be narrowly drawn to express only those interests. Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). While there is a societal interest in the investigation of criminal conduct, the present demands of this criminal investigation do not require the examination of the files of patients receiving psychotherapy. It should be noted that no patient is presently under investigation. The instant proceeding concerns itself solely with the billing practices of Action. Under these circumstances, the patient's interest in preventing the disclosure of records concerning his mental health counseling outweighs the partial hinderance of an ongoing criminal investigation.

With regard to the records of the weight loss clinic, the situation would appear to be reversed. In this context, the confidentiality of the communication between the patient and the weight loss counselor is not, except perhaps in rare cases, essential to the success of the treatment. The nature of the treatment itself suggests that communications between the patient and service-provider do not originate in

the confidence normally attendant in the psychotherapeutic setting.

In summation, the interest of privacy engendered by the psychotherapist-patient relationship precludes the examination of the treatment records of such patients in the context of a criminal investigation of the service provider. The privacy interest in records from the weight loss clinic is, however, much lower both because confidentiality is not essential to the outcome and because of the reduced likelihood that any communication between therapist and patient arose in the context of a confidential relationship. As to these records, the state's interest in preventing fraud on the part of the health care provider is sufficiently compelling as to require their disclosure.

An appropriate order is attached hereto

## ORDER OF COURT

And now, this August 3, 1983, upon the petition of Action Mental Health for a permanent restraining order to impound the records seized under a search warrant issued July 10, 1983, and presently held under seal in the office of the district attorney and the petition of the district attorney to dismiss the equity action for lack of jurisdiction and a hearing having been held and it appearing to the court that said records include the progress notes of the mental health therapists on patients receiving treatment and are within the perameters of the right of privacy, In Re: "B", Appeal of Roth, 482 Pa. 471, 394 A.2d 419 (1978), it is hereby ordered, adjudged and decreed that the petition of the district attorney is dismissed and said records of psychological treatment shall be impounded in the office of the prothonotary of the common pleas court until disposition

can be made of these documents according to the following procedure:

(1) All the documents shall be moved from the district attorney's office to the prothonotary of the common pleas court by the sheriff or his designate.

(2) On September 2, 1983, at 10:00 a.m., or at an earlier date convenient to the parties, the documents shall be moved under the direction of the sheriff to courtroom no. 6.

(3) Notice shall be given to all therapists involved in these proceedings to be present by petitioner.

(4) A representative of Action Mental Health shall identify those files involved in the billing procedures and weight loss clinic and these files shall be available to the district attorney's office.

(5) The individual therapists shall identify those files involving patient progress notes and these files shall be sealed and returned to the office of the prothonotary to remain impounded until further order of court.