Steven W. **SIEGFRIED** and Colleen Siegfried, husband and wife, Plaintiffs,

v.

**CITY OF EASTON,** Alvin Fairchild, Douglas Schlegel, and Michael Orchulli, Defendants.

Civ. A. No. 91–2880.

United States District Court, E.D. Pennsylvania.

Dec. 17, 1992.

Nicholas Noel, III, Teel, Stettz, Shimer & Digiacomo, Ltd., Easton, PA, for plaintiffs.

Hugh J. Hutchison, David J. MacMain, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

HUYETT, Senior District Judge.

This action arises under 42 U.S.C. § 1983 and involves allegations of police brutality by defendant police officers, as well as allegations of a policy, custom or practice of acquiescence and condonation by defendants City of Easton and Alvin Fairchild. In anticipation of trial, plaintiffs have filed a "Motion in Limine in the Nature of Motion to Compel" requesting the production of all documents relating to psychological or psychiatric referral, evaluation or treatment of the defendant Officer Schlegel. Defendants have opposed this motion, arguing that these psychological records are protected by the psychologist-client privilege and the executive privilege. For the reasons stated below, I shall grant plaintiffs' motion and order defendants to produce the psychological records requested by plaintiffs and order that the records be submitted to the Court (Reading Station) for *in camera* inspection.

### I. BACKGROUND

During the discovery phase of this matter, plaintiffs requested from defendants the City of Easton's complete personnel file for Officer Schlegel, all citizen's complaints made against any Easton police officer, all documents relating to any administrative complaints against Officer Schlegel for the past ten years, performance evaluations of Officer Schlegel, criminal complaints filed against Officer Schlegel, training material provided to Officer Schlegel, all correspondence between the City of Easton and any prior employers of Officer Schlegel, and any and all psychological reports regarding Officer Schlegel.

In response to these requests, defendants produced numerous documents including police training material, Officer Schlegel's personnel file, citizen's complaints lodged against Easton police officers, departmental evaluations of Officer Schlegel, criminal complaints filed against Officer Schlegel and all correspondence regarding communications with Officer Schlegel's prior employers. Defendants objected to the request for the psychological records of Officer Schlegel and did not

**100**

produce any responsive documents on the grounds that such information is privileged, confidential and not properly discoverable.

Plaintiffs contend that they are entitled to review the information requested in order to determine the City's knowledge of any violent or overly aggressive propensity of defendant Officer Schlegel.

## II. *DISCUSSION*

### A. *The Psychologist–Patient Privilege*

Defendants argue that the records requested by plaintiffs are protected by the psychologist-patient privilege because they contain confidential communications between a psychologist and his patient. According to defendants, the psychologist-patient privilege has long been recognized under both Pennsylvania and Federal law. *In re June 1979 Allegheny County Investigation Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980); *Good v. Dauphin County Social Services*, 891 · F.2d 1087 (3d Cir. 1989).

■ Jurisdiction in this action is based on a federal question, so the Federal Rules of Evidence govern which privileges are recognized rather than state law. *Longenbach v. McGonigle*, 750 F.Supp. 178 (E.D.Pa.1990). Pursuant to Federal Rule of Evidence 501, the "principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" are to govern the privilege of a witness, person, State, or political subdivision. Fed.R.Ev. 501. Thus, I must examine the federal common law—rather than Pennsylvania law as suggested by defendants—and determine whether the federal courts have recognized a psychologist-patient privilege.

Although the Third Circuit has not squarely addressed this issue, the Court of Appeals for the Second Circuit recently has. In *Doe v. Diamond*, 964 F.2d 1325 (2d Cir.1992), the court surveyed the status of the psychologist-patient privilege in the federal courts and acknowledged that at least three circuits have rejected the privilege. *Id.* at 1328, citing *In re Grand Jury Proceedings*, 867 F.2d 562 (9th Cir.), *cert. denied*, 493 U.S. 906, 110 S.Ct. 265, 107

L.Ed.2d 214 (1989); *United States v. Corona*, 849 F.2d 562 (11th Cir.1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1542, 103 L.Ed.2d 846 (1989); *United States v. Meagher*, 531 F.2d 752 (5th Cir.), *cert. denied*, 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976). However, the Second Circuit declined to join these courts, and, noting the importance of the privilege and its widespread acceptance in forty nine states, the court recognized a "highly qualified" version of the privilege. *Doe v. Diamond*, 964 F.2d at 1328. According to the Second Circuit's analysis, application of the privilege requires a case by case assessment of whether the evidentiary need for the psychiatric history of a witness outweighs the privacy interest at stake. *Id.*

The Second Circuit's reasoning echoes the analysis in *Doe v. Special Investigations Agency, Inc.*, 779 F.Supp. 21 (E.D.Pa. 1991), in which the court ordered the production of psychological records. In *Special Investigations*, the court rejected plaintiffs' contention that the federal psychologist-patient privilege should be interpreted as broadly as the state privilege. Instead, the court found that the policies underlying the Federal Rules of Civil Procedure favor the narrow construction of privileges in order to encourage full access to information necessary to pursuing or defending against claims made in litigation. *Id.* at 24.

■ I find the reasoning of the Second Circuit in *Doe v. Diamond* and of the district court in *Doe v. Special Investigations Agency* persuasive. While a psychologist-patient privilege does exist under the federal common law, it must be narrowly construed and applied only after a balancing of the competing interests involved, mindful of the underlying federal policy in favor of full access to information.

In the instant action, the information sought by plaintiffs is highly relevant and may provide compelling evidence concerning the city's knowledge of defendant Schlegel's propensity toward violence. Thus, there is a significant evidentiary need for the production of this evidence. However, as discussed above, this need

must be weighed against the privacy interest of the witness.

 As described in defendants' brief in opposition to plaintiffs' motion in limine, defendant Schlegel's psychological records were compiled when he interviewed for a position with the police department pursuant to the following procedure: The city requires that all applicants undergo an evaluation by a licensed clinical psychologist. After the examination, the psychologist reports his findings to the police department. The police department considers the report, along with numerous other items, in deciding whether the applicant is a worthy candidate for employment.

 It is obvious from this description that when an applicant consults with this psychologist, he understands that the psychologist will be reporting back to the police department. Confidentiality between psychologist and patient is not expected in this situation. If a patient makes a communication expecting it to be disclosed to a third party who is not involved in the patient's treatment, the psychologist-patient privilege does not apply. 2 Jack Weinstein & Margaret Berger, *Weinstein's Evidence* ¶ 504[5], at 504–24 & n. 9 (1992).

 However, even if anticipated disclosure to a third party did not extinguish the privilege, it would not apply in this case. Under the circumstances described above, it cannot be said that the privacy interests of defendant Schlegel in his communications with a psychologist employed by the police department outweigh the evidentiary need and the federal policy in favor of disclosure. Therefore, I shall compel the production of the records requested by plaintiffs. However, in the interest of avoiding any embarrassment that the dissemination of the sensitive information contained in these records may cause, I encourage the parties to enter into a nondisclosure agreement, as plaintiffs have stated they are willing to do. In addition, I shall order defendants to initially produce the documents to the Court (Reading Station)-for *in camera* inspection, in order to ensure that the information contained therein is indeed relevant.

## B. THE EXECUTIVE PRIVILEGE

Defendants' second basis for objecting to plaintiffs' request for Officer Schlegel's psychological records is that they are protected by the executive privilege. According to defendants, federal courts have recognized the executive privilege doctrine to prevent the disclosure of certain government information whose disclosure would be contrary to the public interest. *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 (E.D.Pa.1973).

 The executive privilege is founded upon the public interest in the effective performance of the constitutional powers and duties assigned to the executive branch. *Crawford v. Dominic*, 469 F.Supp. 260, 263 (E.D.Pa.1979). The privilege belongs to the government, not the individual office holders, and is designed to protect only documents whose disclosure would so seriously hamper the operation of government that they should be kept secret notwithstanding their utility in establishment of a litigant's claim. *Id.* at 264. Because of these characteristics, the privilege must be asserted by the senior official clothed with the privilege, and not merely by that official's attorney. *Id.; United States v. O'Neill*, 619 F.2d 222 (3d Cir. 1980). Once properly asserted, the court must conduct a balancing test to weigh any legitimate concerns about disclosing information that could hamper the operation of government against the interest of the litigant seeking the information, because "the executive privilege is, at most, a qualified one." *O'Neill*, 619 F.2d at 231.

 Although defendants have not properly asserted the executive privilege through an affidavit of the appropriate official, I shall not reject the application of the privilege on that ground. Instead, I find that the evidence requested by plaintiffs does not begin to approach the standard required to invoke the executive privilege. Therefore, its application would be improper in this case.

As stated above, the executive privilege protects only documents whose disclosure

would seriously hamper the function of government. Obviously, there will be some cases in which police investigative and personnel files will need to be kept secret to protect some function of the police department. *Crawford v. Dominic,* 469 F.Supp. 260, 262 (E.D.Pa.1979). However, the executive privilege has been sparingly recognized in only certain situations, as in the protection of confidential informant identities and intragovernmental policy discussions. *See, e.g., O'Neill,* 619 F.2d at 228–30 and cases cited therein. The Third Circuit has specifically questioned the applicability of the privilege based on a vague assertion of the "public interest," pointing out that those cases articulating the existence of such a privilege all hold that the "public interest" did not justify the resistance to disclosure. *Id.* at 230.

In light of the courts' reluctance to recognize the executive privilege unless disclosure would cause specific and serious harm to the functioning of government, I reject defendants' broad assertion that Officer Schlegel's psychological records are protected because disclosure would be against the "public interest." It would make no sense to allow the City, under whose color of authority Officer Schlegel has allegedly violated plaintiff's rights, to limit unilaterally the availability of relevant evidence under the guise of this privilege.

## III. *CONCLUSION*

For the reasons stated above, I shall grant plaintiffs' motion in limine in the nature of a motion to compel. Defendants shall produce Officer Schlegel's psychological records as requested by plaintiff.

An appropriate order follows.

IT IS SO ORDERED.

### ORDER

In consideration of plaintiffs' motion in limine in the nature of a motion to compel, defendants' brief in opposition to plaintiffs' motion and for the reasons stated in the accompanying memorandum:

Plaintiffs' motion in limine in the nature of a motion to compel is GRANTED. De-fendants shall produce all documents which concern or relate to any psychological or psychiatric referral, evaluation or treatment of defendant Officer Douglas Schlegel within ten (10) days of the entry of this Order by the Clerk of Court. These documents shall initially be submitted to the Court (Reading Station) for *in camera* inspection, and upon Court approval will be delivered to plaintiffs.

IT IS SO ORDERED.